UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ELLIOT KRESS,

                    Plaintiff,

          v.

CAVALRY SPV I, LLC, et al.,

                    Defendants.

Civil Action No. 20-3176 (MAS) (DEA)

**MEMORANDUM ORDER**

This matter comes before the Court upon Defendants Cavalry SPV I, LLC ("Cavalry SPV"), and Cavalry Portfolio Services, LLC's ("Cavalry Portfolio") (collectively, "Defendants") Motion to Dismiss Plaintiff Elliot Kress's ("Plaintiff") putative Class Action Complaint and to Compel Arbitration on an individual basis. (ECF No. 7.) Plaintiff opposed (ECF No. 11) and Defendants replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion is denied.

I.    **BACKGROUND**

This action arises out of alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Sometime prior to July 2019, Plaintiff incurred a credit card debt with Citibank, N.A. ("Citibank"). (Compl. ¶¶ 23–26, ECF No. 1.) Citibank ultimately sold the debt to Cavalry SPV. (*Id.* ¶ 27.) Cavalry SPV, in turn, contracted with Cavalry Portfolio to collect the debt. (*Id.*)

Thereafter, on July 25, 2019, Cavalry Portfolio sent Plaintiff a debt collection letter. (*Id.* ¶ 29.) The letter states, in relevant part:

> Cavalry SPV I, LLC purchased the Citibank, N.A. account listed above and is now the creditor for the account. Cavalry SPV I, LLC has referred the account to Cavalry Portfolio Services, LLC ("Cavalry") for servicing.
>
> . . . .
>
> Unless you notify Cavalry within thirty days after receiving this letter that you dispute the validity of this debt or any portion thereof, Cavalry will assume this debt is valid. If you notify Cavalry in writing within thirty days from receiving this notice that you dispute the validity of this debt or any portion thereof, Cavalry will obtain verification of the debt or a copy of a judgment, if applicable, and mail you a copy of such verification or judgment. If you request it from Cavalry in writing within thirty days after receiving this notice, Cavalry will provide you with the name and address of the original creditor, if different from the current creditor.

(Correspondence, Ex. A to Compl., ECF No. 1-1.) According to Plaintiff, the notice "is unclear and misleading by using the term Cavalry which can refer to either the current creditor, Defendant Cavalry Portfolio or the current owner of the debt, Defendant Cavalry SPV." (Compl. ¶ 32.) Plaintiff alleges he was "misled by the term Cavalry because it is vague and does not directly communicate to him whether he should direct his potential dispute with Defendant Cavalry SPV or Defendant Cavalry Portfolio." (*Id.* ¶ 33.) Consequently, Plaintiff claims he "sustained an informational injury as he was not fully apprised of his rights and responsibilities necessary to properly exercise his options[.]" (*Id.* ¶ 38.)

On March 24, 2020, Plaintiff filed the instant two-count putative class action against Defendants alleging violations of the FDCPA. (*See generally* Compl.) Count One alleges Defendants violated Section 1692e(10) by "[m]aking a false and misleading representation[.]" (*Id.* ¶¶ 41–45.) Count Two alleges Defendants violated Sections 1692g(4) and (5) by "omitting the requirement that the consumer must dispute or request information in writing[.]" (*Id.* ¶¶ 46–51.) Defendants now move to dismiss and compel arbitration.

2

## II.    DISCUSSION

Defendants assert that Plaintiff's account with Citibank was governed by a Card Agreement that, *inter alia*, permitted either party to elect to "arbitrate any claim, dispute or controversy between [them] arising out of or related to [Plaintiff's] Account[.]" (Defs.' Moving Br. 10–12 (quoting Card Agreement *14,[1] Ex. 1 to Peck Decl., ECF No. 7-3), ECF No. 17-1.) According to Defendants, they acquired the right to enforce the arbitration provision when they purchased Plaintiff's account from Citibank. (*Id.* at 12–13 (quoting Peck Decl. ¶ 13).) Consequently, Defendants contend that Plaintiff is "contractually obligated to arbitrate . . . the claims asserted in his complaint[.]" (*Id.* at 1.)

In opposition, Plaintiff argues that Defendants' Motion is premature because the Complaint neither relies on nor references any of the documents submitted by Defendants with their Motion, including the Card Agreement. (Pl.'s Opp'n Br. 5–7, ECF No 11.) In addition, Plaintiff contends that Defendants only acquired the right to collect the debt, not all the rights under the Card Agreement. (*Id.* at 7–11.) Plaintiff requests that the Court "order limited discovery on the issue of arbitrability, and allow Defendants, if they choose, to refile their motion under a summary judgment standard." (*Id.* at 5.)

"It is well established that the Federal Arbitration Act [('FAA')] reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009).

---

[1] Page numbers preceded by an asterisk refer to the page number on the ECF header.

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis*, 560 F.3d at 160). The Third Circuit has provided the following standard for district courts to apply when considering a motion to compel arbitration:

> When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol.*, 716 F.3d 764, 776 (3d Cir. 2013) (alteration in original) (internal quotation marks and citation omitted).

Here, whether Plaintiff's claims are subject to an enforceable arbitration clause is not apparent from the face of the Complaint or the collection letter attached thereto. As Plaintiff notes, neither of these submissions reference the Card Agreement. (*See* Pl.'s Opp'n Br. 5.) Rather, the Card Agreement and the contested arbitration provision are raised for the first time in Defendants' instant Motion. Applying *Guidotti*, however, this Court recently denied a motion to compel arbitration under similar circumstances because the issue of arbitrability could not be resolved without considering evidence extraneous to the pleadings. *Madlinger v. Midland Credit. Mgmt., Inc.*, No. 19-21183, 2020 WL 7640918, at *3 (D.N.J. Dec. 23, 2020). Other courts have held the same. *See, e.g., Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) ("Because the question of arbitrability cannot be resolved without considering

4

evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion."); *Hejamadi v. Midland Funding*, No. 18-13203, 2019 WL 4855624, at *4–5 (D.N.J. Oct. 2019) (same); *see also Dotson v. Atl. Credit & Fin., Inc.*, No. 19-1143, 2019 WL 4785641, at *3–4 (D.N.J. Sept. 27, 2019).

In their Moving Brief, Defendants cite *Doyle v. Ad Astra Recovery Services*, No. 17-5233, 2018 WL 1169121 (D.N.J. Mar. 6, 2018), to support their proposition that "the Complaint's allegations and the documents they rely upon permit the Court to decide the Motion pursuant to Rule 12(b)(6) and to consider the documents attached to the instant Motion." (Defs.' Moving Br. 6–7.) But *Doyle* is distinguishable. There, the court found that "even though [the] [p]laintiff's complaint does not attach the agreement that contains the arbitration provision at issue, the [c]ourt may consider it because [the] [p]laintiff's claims derive from the agreement[.]" *Doyle*, 2018 WL 1169121, at *2. In reaching its decision, the court noted that (1) the agreement expressly referred to the defendant collection agency as a "related party," and (2) the plaintiff did "not argue that discovery is required to interpret the agreement." *Id.*

Here, by contrast, Defendants do not claim that they were parties to the original Card Agreement, let alone that the Card Agreement references them as such. Indeed, the parties dispute whether the right to enforce the arbitration provision was transferred with the sale of Plaintiff's account. In that regard, Plaintiff notes that Defendants submitted a Bill of Sale and Assignment which contains the undefined term "Accounts." (Pl.'s Opp'n Br. 9; *see* Bill of Sale *58, Ex. 3 to Peck Decl., ECF No. 17-1.) Plaintiff also notes that Defendants did not produce the Master Purchase and Sale Agreement referenced therein, which may clarify whether the right to enforce the arbitration provision was transferred with the sale of Plaintiff's account. (Pl.'s Opp'n Br. 10.)

5

Thus, even if the Court were to consider the documents attached to the instant Motion, those documents do not conclusively establish that Plaintiff is subject to arbitration.[2]

For the reasons set forth above, the Court denies Defendants' Motion without prejudice and will permit the parties to engage in limited discovery on the issue of arbitrability. Accordingly,

IT IS on this **24th** day of March 2021, **ORDERED** that:

1.      Defendants' Motion to Dismiss and Compel Arbitration (ECF No. 7) is **DENIED** without prejudice.

2.      The parties are directed to conduct limited discovery on the issue of arbitrability.

3.      By **April 7, 2021**, the parties shall e-file joint correspondence to the Honorable Douglas E. Arpert, U.S.M.J., proposing a schedule for limited discovery.

4.      Within seven days of the completion of limited discovery, the parties shall e-file joint correspondence updating the Court on the status of the matter and whether additional briefing is necessary.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[2] The Bill of Sale and Assignment states, in part: "For value received and subject to the terms and conditions of the Master Purchase and Sale Agreement[,] . . . the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts[.]" (Bill of Sale *58.) In support of their Motion, Defendants submitted a declaration from William Peck, a Citibank employee, who avers that "Citibank sold all rights, title and interest in [Plaintiff's] Account to Cavalry SPV I, LLC." (Peck Decl. ¶ 13.) At least one other court has declined to find that such declaration resolved the issue of arbitrability. *See Valentine v. Midland Funding*, LLC, No. 19-18034 (ES) (MAH), ECF No. 34, at 6 ¶ 10 (D.N.J. June 30, 2020) (noting the "[d]efendants essentially ask the [c]ourt to determine what rights were transferred to Midland based on legal conclusions submitted by . . . Citibank N.A.'s corporate representatives. Without the Master Purchase and Sale Agreement, it is not apparent to the [c]ourt that *all rights, title and interest'* in the Accounts were indeed assigned to Midland." (emphasis in original) (citations omitted)).